UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ZOHAIR ALNABULSI,                              :
                                              :
    Plaintiff                                  :
                                              :
v.                                             :
                                              :
MIDLAND FUNDING, LLC,                          :    No. 3:15-cv-00247
                                              :
    Defendant.                                 :

**RULING ON MOTION TO DISMISS**

Plaintiff Zohair Alnabulsi ("Alnabulsi") filed a single-count first amended complaint ("FAC") against Defendant Midland Funding, LLC ("Midland"), alleging a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 (Count One). Midland moves to dismiss for lack of subject matter jurisdiction, arguing that the FAC fails to meet the amount in controversy requirement for diversity cases under 28 U.S.C. § 1332. For the reasons stated below, the Court DENIES Midland's motion to dismiss. (ECF No. 33.)

**I.     BACKGROUND**

The following factual allegations are taken from the FAC and are accepted as true for the purpose of deciding Midland's motion to dismiss.

   **A.  Factual Background**

Alnabulsi is a resident of Guilford, Connecticut. (FAC, ECF No. 32 at ¶ 1.) In 2008, Alnabulsi underwent a "failed back surgery and was diagnosed with Complex Regional Pain Syndrome ("CRPS")." (*Id.* at ¶ 29.) Alnabulsi lost his job as a result of his disability (*id.*), and this apparently led him to incur substantial credit card debt.

Midland is a Delaware limited liability corporation the sole member of which is Midland Portfolio Services, Inc., a Delaware corporation. (ECF No. 32 at ¶ 2, 4.)[1]

On November 23, 2011, Midland sued Alnabulsi for credit card debt it had purchased from Chase Bank. (*Id.* at ¶ 30.) On March 27, 2012, Midland secured a default judgment against Alnabulsi for $5,836.63. (*Id.* at ¶ 31.) On April 3, 2012, Midland placed a judgment lien on 2 Covey Crossing in Guilford, Connecticut. (*Id.* at ¶ 32.) It is not clear whether Midland performed a title search on the property at 2 Covey Crossing. (*Id.* at ¶ 33.) Alnabulsi did not own 2 Covey Crossing at the time of the judgement lien. (*Id.* at ¶ 32.) The owner of 2 Covey Crossing learned of the lien in March 2013, after being unable to close on a mortgage refinancing agreement until the judgment was satisfied. The lien halted the refinancing process. (*Id.* at ¶ 34-35.) A Midland employee failed to resolve the issue in a phone call with the owner. (*Id.* at ¶ 36.) "The delay in closing ended up costing an extra 25 basis point[s], 0.25% on the entire amount of the loan, [and] additional attorney fees to deal with the lien problem." (*Id.* at ¶ 37.)

After being notified of the presence of the lien, Alnabulsi was blamed for the delay in the closing, the higher rate on the mortgage, and the additional costs imposed on the owner of 2 Covey Crossing. (*Id.* at ¶ 38.) As a result, Alnabulsi had increased episodes of migraine headaches and sleep disturbances, and became depressed. (*Id.*) Alnabulsi borrowed $7,500 from

---

[1] On May 4, 2016, the Court ordered Alnabulsi to file an amended complaint alleging the citizenship of each of Midland's members. (ECF No. 31.) For purposes of diversity jurisdiction, a limited liability company has the citizenship of its members. *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000). Alnabulsi filed his amended complaint on May 17, 2016, but did not fully comply with the order. He stated that Midland's sole member is Midland Portfolio Services, Inc., a Delaware corporation, but he did not provide its principal place of business. Therefore, Alnabulsi shall file a signed statement that sets forth the principal place of business of Midland Portfolio Services, Inc., within 21 days.

a friend to give to the owner of 2 Covey Crossing to put in escrow.  (*Id.* at ¶ 39.)  He had to drive from Guilford, Connecticut to Bloomingdale, New Jersey to get the money.  (*Id.*)  Alnabulsi was charged a $500 "upfront fee" and an "additional 2% a month in interest" by his friend, which caused Alnabulsi more stress due to other financial obligations.  (*Id.*)

The owner of 2 Covey Crossing had no relationship with Midland.  (*Id.* at ¶ 42.)  Alnabulsi alleges that Midland engaged in "unfair, deceptive conduct to collect a debt," and "caused the Plaintiff to come up with money he does not have, to make sure the refinancing process will continue."  (*Id.* at ¶ 41.)  It further caused "fights and hardship in addition to monetary losses" and "embarrassment [and] humiliation in front of the attorney, and the bank officers involved in the closing process."  (*Id*. at ¶ 43.)[2]  As a result of the stress, Alnabulsi was prescribed Duloxetine, Alprazolam, and Bupropion for his major depression, anxiety, and pain.  (*Id.* at ¶ 4.)  Additionally, Alnabulsi suffered increased episodes of migraines and insomnia.  (*Id*.)

Alnabulsi alleges that Midland generates "a significant portion of their revenue by filing lawsuits and collecting on judgments against individual consumers."  (*Id.* at ¶ 13.) Midland filed 245,000 collection lawsuits in 2009.  (*Id.* at ¶ 20.)  The majority of the collection lawsuits resulted in default judgment in favor of Midland due to lack of defendant appearance or response.  (*Id*.)  Midland Credit Management ("MCM") is a subsidiary of Encore Group, Inc., which is also the parent company of Midland. (*Id.* at ¶ 3.) At least three MCM employees "admitted under oath in different sworn testimony that they signed false statements that were filed in courts around the country to obtain judgments against individual citizens in favor of Midland."  (*Id.* at ¶ 21.) The MCM employees testified that they would sign 300 to 400 computer

---

[2] Although the complaint does not specify the relationship between Alnabulsi and the owner of 2 Covey Crossing, Midland's brief states that the owner is Alnabulsi's ex-wife. (ECF No. 34 at 2 n.1.)

generated affidavits each day without reading them, having any knowledge of the information contained in them, or checking the accuracy of the information to which they were swearing to. (*Id.* at ¶ 22.)  MCM employees testified that Midland used "robo-signed affidavits attesting to the authenticity of documents attached to the affidavit that purported to substantiate the debt." (*Id.* at ¶ 26.)  These practices allowed Midland to obtain a judgment against Alnabulsi, based on "incomplete information supported by what could be false or fraudulent affidavits." (*Id.* at ¶ 28.)

### B. Procedural History

Alnabulsi filed his original complaint on February 20, 2015.  (ECF No. 1.)  On September 28, 2015, Midland filed a motion to dismiss Count Two because the one-year statute of limitations under the Fair Debt Collection Practices Act (FDCPA) had expired.  (ECF No. 11.)  On January 27, 2016, the Court dismissed Count Two as untimely.  (Order, ECF No. 22.)  The Court gave Alnabulsi an opportunity to "submit a signed statement setting forth the citizenship of each of Midland's members" showing that there was diversity jurisdiction to proceed on Count One.  (*Id.*)  On February 11, 2016, Alnabulsi filed a "Statement in Support of Diversity Jurisdiction," responding to the Court's order and Midland's amount in controversy argument. (ECF No. 26.)  On May 4, 2016, the Court gave Alnabulsi an opportunity to file an amended complaint "alleging facts demonstrating (1) the citizenship of each of Midland's members, and (2) the amount he claims in emotional damages as a result of Midland's alleged violation of CUTPA."  (Order, ECF No. 31.)  Subsequently, Alnabulsi filed his First Amended Complaint (FAC) on May 17, 2016.  (ECF No. 32.)

On February 9, 2016, Midland filed a motion for leave to file a memorandum regarding the Court's jurisdiction, in which it argued that even if the parties in this case are diverse, the amount in controversy does not exceed $75,000.  (ECF Nos. 23, 24, 25.)  On May 31, 2016,

Midland filed a motion to dismiss Alnabulsi's FAC under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (ECF No. 33.)  On January 19, 2017, the Court ordered Midland to file a "Notice to Pro Se Litigant." (ECF No. 37.)  Midland filed a "Notice to Self-Represented Litigant Concerning Motion to Dismiss" on January 19, 2017 (ECF No. 38.), and Alnabulsi filed a "Motion in Opposition of Dismissal" on February 6, 2017.  (ECF No. 39.)

## II.   STANDARD

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Gonzalez v. Option One Mortgage Corp.*, No. 3:12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citations and internal quotation marks omitted).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *Id*.  "On a Rule 12(b)(1) motion, however, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . . "  *Id*.  "A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id*.  "[P]leadings of a *pro se* plaintiff must be read liberally and should be interpreted to 'raise the strongest arguments that they suggest.'"  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## III.  DISCUSSION

Midland argues that the FAC should be dismissed because it fails to meet the amount in controversy requirement.  The Supreme Court has stated, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the

5

proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (*citing Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir. 1975)). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (*quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

The Second Circuit has "held that the legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (internal quotation marks and citation omitted). "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Scherer*, 347 F.3d at 397 (internal quotation marks and citation omitted). "The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d. Cir. 1982) (holding that a defense on the merits may not be considered or adjudicated on jurisdictional motions). A court "assess[es] the amount in controversy at the time the action is commenced, without regard to the merits of the claims or defenses, and without regard to subsequent events

proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (*citing Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir. 1975)). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (*quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

The Second Circuit has "held that the legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (internal quotation marks and citation omitted). "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Scherer*, 347 F.3d at 397 (internal quotation marks and citation omitted). "The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d. Cir. 1982) (holding that a defense on the merits may not be considered or adjudicated on jurisdictional motions). A court "assess[es] the amount in controversy at the time the action is commenced, without regard to the merits of the claims or defenses, and without regard to subsequent events

which bring the amount in controversy below the jurisdictional requirement." *Kry v. Poleschuk*, 892 F. Supp. 574, 576 (S.D.N.Y. 1995).

Alnabulsi alleges that Midland violated CUTPA by placing a lien on property not belonging to its debtor or without conducting research on the owner or completing a title search. (FAC, ECF No. 32 ¶ 44.)  He alleges that he borrowed $7,500 from a friend, at a cost of a $500 fee and 2% monthly interest, to enable the owner of the wrongly liened property to proceed with the refinancing.  (*Id*. at ¶ 39.)  Alnabulsi claims that he "suffered an ascertainable loss of money, and suffered emotional distress as a result of Midland's unfair or deceptive commerc[ial] practice."  (*Id*. at ¶ 44.)  He seeks damages for emotional distress in the amount of $80,000 "and any actual, compensatory and statutory damages, appropriate equitable relief, costs of suit and attorney's fees pursuant to § 42-110g, and such other relief as the Court deems just and proper." (*Id*. at 9, "Prayer.")  He also asks for $5,000,000 in punitive damages to be paid to the State of Connecticut "or any other amount the Court finds equitable."  (*Id*.)

Midland argues that Alnabulsi's claim does not meet the jurisdictional amount of $75,000 because he cannot recover emotional damages under CUTPA.  (ECF No. 34.)  Midland points to a Connecticut Appellate Court decision holding that emotional distress or injury does not satisfy the threshold requirement of an "ascertainable loss" under CUTPA.  *Di Teresi v. Stamford Health System, Inc.*, 149 Conn. App. 502, 512 (2014) (*citing Builes v. Kashinevsky*, No. CV-09-5022520S, 2009 WL 3366265 at *2 (Conn. Super. Ct. Sept. 15, 2009) (explaining that Superior Court decisions have consistently held that emotional distress on its own is not an ascertainable loss under CUTPA)).  CUTPA's "ascertainable loss" requirement stems from the following language in the statute: "[A]ny person who suffers any *ascertainable loss* of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by

7

section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages." Conn. Gen. Stat. § 42-110g (emphasis added.)  The *Di Teresi* court held that "the plaintiffs' claim of emotional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA," because there was no claim that the plaintiff "suffered any actual monetary or physical loss."  149 Conn. App. at 510, 512; *see also Larobina v. Wells Fargo Bank, N.A.*, 2014 WL 3419534, at 1 (D. Conn. July 10, 2014), *aff'd*, 632 F. App'x 55 (2d Cir. 2016).

While it is true that *Di Teresi* and *Larobina* hold that emotional damages on their own do not constitute an ascertainable loss, the Court has found no Connecticut appellate or Second Circuit decision holding that actual damages under CUTPA cannot include damages for emotional harm where there is otherwise an ascertainable loss. The language of the statute itself leaves open the possibility that once a CUTPA claimant has satisfied the threshold requirement of an ascertainable loss by alleging some monetary harm – as Alnabulsi has by claiming interest and other costs for the loan from his friend –, he may recover his "actual damages," a term that might include damages for emotional harm.  Conn. Gen. Stat. § 42-110g(a) ("Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages.").  To be sure, the term "actual damages" does not always include damages for emotional distress.  *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012) (holding that "actual damages" as used in provision of Privacy Act, 5 U.S.C. § 552a, authorizing actions against federal government does not include damages for emotional distress, because the "meaning of 'actual damages' is far from clear," and "changes with the specific statute in which it is found."; although the term "is sometimes understood [in other federal statutes] to include nonpecuniary

8

harm," the Supreme Court construed it not to include such harm in a provision authorizing damages against the federal government, because waivers of sovereign immunity are narrowly construed.)  Furthermore, the Court has been unable to find any Connecticut appellate decisions construing the term within the context of CUTPA. *See Meade v. Briarwood Acquistions, LLC*, 2014 WL 7271955, at *5 (Conn. Super. Ct. Nov. 12, 2014) ("It is an unsettled question whether 'actual damages' awardable to a successful CUTPA plaintiff include damages for pain and suffering, or emotional distress.")

Still, CUTPA is "remedial in character ... and must be liberally construed in favor of those whom the legislature intended to benefit." *Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*, 310 Conn. 797, 817, (2014).  A liberal construction of the term "actual damages" in CUTPA would allow recovery for emotional harm, at least where there was also economic harm sufficient to satisfy the threshold requirement of an "ascertainable loss," as there is in this case.  In any event, the uncertainty as to whether the term "actual damages" in CUTPA embraces damages for emotional harm is enough to defeat Midland's challenge to the amount in controversy set forth in the amended complaint, which includes an allegation that Alnabulsi suffered emotional distress damages exceeding $75,000.  That uncertainty prevents the Court from concluding that "the legal impossibility of recovery [is] so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996).

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Defendant Midland's motion to dismiss.

As directed in Footnote 1, Alnabulsi shall file a signed statement that sets forth the principal place of business of Midland Portfolio Services, Inc., within 21 days. Failure to do so will result in dismissal of this action.

IT IS SO ORDERED.

                                              /s/
                                    Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                March 23, 2017